UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID OLIVEIRA,<br>Plaintiff, | )<br>) |
| v. | ) DOCKET NO. |
| EDART TRUCK LEASING CORP.<br>AND DAVID PROUT,<br>Defendants. | )<br>)<br>)<br>) |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

### Jurisdiction

1. Jurisdiction of this action arises under the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12111, et seq.

### Venue

2. Venue is proper in this court in that this is the judicial district in which Plaintiff resides and in which the relevant events occurred.

### Parties

3. Plaintiff David Oliveira ("Plaintiff") is an individual residing in New Bedford, Bristol County, Massachusetts.

4. Defendant Edart Truck Leasing Corp. ("Edart") is a corporation doing business in the Commonwealth of Massachusetts with a principal place of business at 185 West Service Road, Hartford, Connecticut.

5. Defendant David Prout ("Prout") is an individual with a last known place of business at Edart's facility located at 100 Wales Avenue, Avon, Norfolk County, Massachusetts.

## General Allegations

6. Plaintiff was employed by Defendant Edart from approximately September 1997 until May 30, 2003, when his employment was terminated.

7. Plaintiff was initially hired by Edart as a mechanic.

8. Plaintiff performed his job satisfactorily at Edart, receiving regular pay raises and additional responsibilities.

9. By September 2000, Plaintiff was promoted to diesel technician and was lead mechanic and supervisor on the third shift.

10. At times material hereto, Defendant David Prout ("Prout") was the Branch Manager of Edart's facility in Avon, Massachusetts, the facility at which Plaintiff worked.

11. At all times material, Prout held a supervisory position over Plaintiff.

12. During the course of his application for employment with Edart in 1997, Plaintiff disclosed to Edart that he had a military service-related back injury. Plaintiff disclosed to Edart that he had injured his back in the military during a parachute jump and that his disability rating by the military for his back injury was 40%.

13. Plaintiff underwent pre-employment back performance and functional testing at the request of Edart. The September 18, 1997 report from this testing ranked Plaintiff's performance at the 39th percentile, which it explained as Plaintiff performing better than 39 percent of the population.

14. Edart received the September 18, 1997 report from this testing.

15. Between 1999 and 2002, Plaintiff had active medical treatment for his chronic back condition at the V.A. Hospital.

16. The V.A. Hospital diagnosed Plaintiff with a small herniation at L5 S1, spina bifida occulta at S1, scoliosis, and chronic radiculopathy in both legs. Plaintiff was treated with injection therapy, physical therapy, acupuncture, a TENS unit and medications.

17. Plaintiff informed Prout when he needed to go for treatment for his back injury.

18. Edart was aware of Plaintiff's ongoing back problems.

19. In or about March 2001, Plaintiff told Prout that his back was bothering him and that he was undergoing a course of treatment at the V.A. Hospital that might last a year.

20. Plaintiff asked Prout if he could be assigned less strenuous jobs. Prout agreed to do so and told Plaintiff to do what he could do and do his office work when he could not do the mechanic work. Prout agreed to "spread the work around' the three shifts and make lighter work available to Plaintiff.

21. Plaintiff offered to provide Prout with a medical note supporting this request for accommodation, but Prout stated that it was not necessary.

22. The requested accommodation was granted initially by Prout. This accommodation lasted approximately three months. Thereafter, Mr. Prout, through Second Shift Supervisor Tim Daley, specifically assigned heavy jobs to Plaintiff. In addition, Plaintiff's third shift was increasingly left with heavy jobs from the first and second shifts.

23. When Plaintiff complained to Prout about this, Prout responded, "Isn't that what you are getting paid for?" Prout also repeatedly asked Plaintiff, "Do you like your job?"

24. Plaintiff made a second similar request to Prout for accommodation for his back injury in December 2001.

25. Prout failed and/or refused to provide Plaintiff with the requested accommodation.

26. In 2001, Second Shift Supervisor Tim Daley began to sabotage and otherwise interfere with Plaintiff's work schedule by failing to give Plaintiff the work orders ("turnovers") for his shift in a timely manner. Daley would give the turnovers to Plaintiff two to three hours after Plaintiff arrived for work on the third shift. This resulted in wasted time and lessened ability for Plaintiff to meet the job assignments on his shift.

27. Plaintiff brought Daley's conduct to the attention of Prout's on several occasions. However, Prout failed to take appropriate corrective action and Mr. Daley continued his conduct.

28. Prout began to issue notes to Plaintiff regarding punching out for lunch when a similar requirement was not made with regard to a comparable non-disabled employee, Second Shift Supervisor Tim Daley.

29. In or about August 2001, because of the heavy work being assigned him on third shift and because of the conduct of Second Shift Supervisor Tim Daley in failing to timely provide the turnovers, Plaintiff asked Edart for a transfer from the third to the first shift and a demotion to mechanic.

30. Edart refused Plaintiff's request for a transfer to first shift, falsely stating that there was no available position on the first shift.

31. There was in fact an available position on the first shift at the time because a mechanic had left. In fact, Plaintiff's subordinate, Bill Blanchard, was given the first shift job instead of Plaintiff.

32. Plaintiff continued to work as a supervisor on the third shift thereafter.

33. On or about March 19, 2002, Plaintiff suffered a work-related injury to his left arm.

34. Plaintiff reported the injury to Edart but did not seek immediate medical attention, hoping that the symptoms would resolve on their own.

35. On March 26, 2002, Plaintiff wrote a letter to Edart's Vice President Howard Siegal complaining about the discriminatory treatment and harassment by Prout.

36. On or about April 21, 2002, Edart involuntarily demoted Plaintiff and transferred him to the first shift.

37. Prout told Plaintiff that all he had for him if he wanted to work there was the first shift mechanic's job, Tuesday through Saturday.

38. Plaintiff spoke to Vice President Siegal afterwards about this demotion. Siegal told Plaintiff that the reason for it was "customer complaints" and a lack of supervisory ability. Siegal offered little explanation to Plaintiff, but stated that Edart had no problems with Plaintiff's mechanic work.

39. Upon information and belief, there were no customer complaints and the stated reasons for the transfer and demotion were a pretext for discrimination and retaliation.

40. Plaintiff's former subordinate, Bill Blanchard (who had been given the first shift job instead of Plaintiff in August 2001), was transferred back to the third shift as Plaintiff's replacement.

41. On or about April 24, 2002, Plaintiff commenced active treatment for the work-related injury to his left arm.

42. Plaintiff was diagnosed with left ulnar neuropathy and pronator teres tendonitis.

43. Plaintiff was given a sling and medication and taken out of work for approximately two weeks and then released to work by his doctor to light duty work with medical restrictions.

44. Plaintiff received worker's compensation benefits for lost wages and medical expenses as a result of this work injury.

45. On April 29, 2002, Plaintiff filed a charge of disability discrimination against Edart with the Massachusetts Commission Against Discrimination (the "Charge").

46. Plaintiff continued to work on a light duty basis at Edart from approximately May 2002 to October 2002.

47. On October 8, 2002, Plaintiff underwent surgery on his left arm.

48. Plaintiff returned to work on a light duty basis on or about December 27, 2002 and continued under active medical care for his work injury.

49. Edart failed on several occasions to accommodate the work restrictions from Plaintiff's left arm injury.

50. For example, in May or June 2002, Prout assigned Plaintiff to "pull" a 30-40 lb. starter from a truck in violation of his work restrictions. Plaintiff did so with the result that his arm became swollen and his doctor increased his restriction to no use of the left arm. Edart also had Plaintiff pick up parts (e.g., a muffler and exhaust pipe) that far exceeded his medical restrictions.

51. Prout made another change in Plaintiff's work schedule for the stated reason that the mechanics on the Saturday shift were complaining that Plaintiff was not doing enough due to his light duty status.

52. Prout told Plaintiff that "the mechanics and Corporate" were complaining that Plaintiff was "just sitting around" while on light duty.

53. Edart insisted that Plaintiff perform light duty work in lieu of staying out on worker's compensation and then did not have enough light duty assignments for Plaintiff to do.

54. This treatment led Plaintiff's counsel to write Respondent's counsel on January 7, 2003 in an effort to remedy this situation.

6

55. Edart made no response to the January 7, 2003 letter of Plaintiff's counsel.

56. On May 30, 2003, while the Charge was still pending at the MCAD, Edart terminated Plaintiff's employment.

57. Edart terminated Plaintiff's employment based upon a Functional Capacity Evaluation ("FCE") report dated April 8, 2003 performed by a medical provider in connection with Plaintiff's work-related left arm injury.

58. The FCE report indicated that lack of clarity with regard to the physical requirements of my job made it unable to determine whether Plaintiff was medically able to perform the duties of his job on a full duty basis. The report stated that Edart's job description failed to set forth specific physical requirements of the job. In addition, the stated physical requirements by Prout and by Plaintiff differed.

59. The FCE report concluded that Plaintiff was able to return to work full duty if lifting was limited to 25 lbs. and holding parts in place under vehicles was limited to 20 lbs. The FCE further indicated that Plaintiff was not at a medical end result and that full recovery would likely take place by approximately October 2003.

60. Rather than continue to accommodate Plaintiff's work-related disability, Edart terminated Plaintiff.

61. Plaintiff is deemed a qualified handicapped person pursuant to M.G.L. c. 152, §75B since he had sustained a work-related injury and was able to perform the essential functions of a particular job with or without accommodation. Plaintiff held that protected status when he was terminated.

62. Plaintiff is a qualified handicapped person and/or a qualified individual with a disability within the meaning of M.G.L. c. 151B and the ADA.

63. Upon information and belief, Plaintiff was replaced by a non-handicapped and non-disabled person.

64. In its letter of termination, Edart invited Plaintiff to "consider employment at Edart" if his medical circumstances changed to enable him to perform the essential functions of his job.

65. Plaintiff's treating physician released Plaintiff to work without restrictions as of September 23, 2003.

66. Upon information and belief, Edart was aware that Plaintiff had been released to work as of September 23, 2003.

67. On February 18, 2004, Plaintiff's counsel faxed and mailed Edart's attorney a letter requesting Plaintiff's reinstatement to employment at Edart based on his medical recovery.

68. On March 1, 2004, Plaintiff's counsel received a response to the request for reinstatement directing Plaintiff to submit an application if he wished to be considered for a position.

69. Plaintiff submitted an application for reemployment as directed.

70. Plaintiff has received no response to his application, despite the passage of more than a week since the submission of the application.

71. Upon information and belief, Edart does not want to rehire Plaintiff because it fears that he will reinjure himself and/or because he has engaged in the protected activities of opposing discriminatory practices and filing the Charge.

72. Defendants Edart and Prout have engaged in discrimination against Plaintiff because of his disability or handicap.

73. Defendants Edart and Prout have retaliated against Plaintiff because Plaintiff has engaged in the protected activities of opposing discriminatory practices and filing the Charge.

74. Defendants discriminated against Plaintiff because of his disability, his record of a disability and/or his perceived disability.

75. Plaintiff was at all relevant times qualified to perform the essential functions of his job with reasonable accommodation.

76. Defendants' acts were intentional, malicious and/or done with reckless indifference to Plaintiff's rights.

77. Plaintiff has been the victim of intentional employment discrimination by Defendants.

78. Plaintiff has been injured and damages by Defendants' acts.

79. Defendants' acts were intentional, malicious and/or done with reckless indifference to Plaintiff's rights.

80. Edart at all relevant times employed more than 15 persons.

81. Plaintiff has complied with all statutory requirements and conditions precedent necessary to maintain this action, namely the timely filing of a charge of discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.

82. On December 19, 2003, the EEOC issued Plaintiff a notice of right to sue.

### COUNT I
**(Violation of the Americans With Disabilities Act)**
(Against Edart only)

83. Plaintiff repeats the allegations contained in paragraphs 1 through 82 as if fully set forth herein.

84. Plaintiff at all relevant times was a qualified individual with a disability within the meaning of 42 U.S.C. 12111 §101(8).

85. Defendant Edart's acts represent, inter alia, intentional violations of the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12111, et seq.

## COUNT II - Retaliation
### (Violation of the Americans With Disabilities Act)
(Against both Defendants)

86. Plaintiff repeats the allegations contained in paragraphs 1 through 85 as if fully set forth herein.

87. Defendants discriminated against Plaintiff because he opposed acts or practices made unlawful by the ADA or because Plaintiff assisted or participated in any manner in an investigation, proceeding, or hearing under the ADA.

88. Defendants coerced, intimidated, threatened, or interfered with Plaintiff in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged another individual in the exercise or enjoyment of, rights granted or protected by the ADA.

89. Defendants' conduct represents, inter alia, retaliation in violation of 42 U.S.C. § 12203.

## COUNT III
### (Violation of M.G.L. c. 151B – Handicap Discrimination)
(Against both Defendants)

90. Plaintiff repeats the allegations contained in paragraphs 1 through 89 as if fully set forth herein.

91. Defendants' conduct represents, inter alia, intentional discrimination on the basis of handicap in violation of M.G.L. c. 151B, s. 4(16).

92. Prout aided and abetted Edart in such discrimination and unlawfully interfered with Plaintiff's rights in violation of M.G.L. c. 151B, s. 4(4A) and 4(5).

## COUNT IV - Retaliation
### (Violation of M.G.L. c. 151B)
(Against both Defendants)

93. Plaintiff repeats the allegations contained in paragraphs 1 through 92 as if fully set forth herein.

94. Defendants' conduct represents, inter alia, retaliation in violation of M.G.L. c. 151B, s. 4(4) and 4(4A).

95. Prout aided and abetted Edart in such discrimination and unlawfully interfered with Plaintiff's rights in violation of M.G.L. c. 151B, s. 4(4A) and 4(5).

## COUNT V
### (Violation of M.G.L. c. 152, s. 75B)
(Against Edart only)

96. Plaintiff repeats the allegations contained in paragraphs 1 through 95 as if fully set forth herein.

97. Edart terminated and otherwise discriminated against Plaintiff because of his assertion of rights under the Massachusetts workers' compensation laws.

98. Edart's acts represent, inter alia, violations of M.G.L. c. 152, s. 75B.

## COUNT VI
### (Violation of M.G.L. c. 152, s. 75A)
(Against Edart only)

99. Plaintiff repeats the allegations contained in paragraphs 1 through 98 as if fully set forth herein.

100. Plaintiff is entitled to a hiring preference pursuant to M.G.L. c. 152, s. 75A for suitable and available jobs at Edart over persons not employed by Edart at the time.

101. Edart has failed to give Plaintiff that hiring preference following his termination.

102. Edart's acts represent, inter alia, violations of M.G.L. c. 152, s. 75A.

## COUNT VII
### (Intentional Infliction Of Emotional Distress)
(Against Defendant Prout only)

103. Plaintiff repeats the allegations contained in paragraphs 1 through 102 as if fully set forth herein.

104. Prout intended to inflict emotional distress upon Plaintiff or he knew or should have known that emotional distress was the likely result of his conduct.

105. The conduct of Prout was extreme and outrageous and beyond all possible bounds of decency and utterly intolerable in a civilized community.

106. The actions of Prout caused severe emotional distress.

107. Plaintiff's emotional distress was severe and of a nature that no reasonable person could be expected to endure it.

## RELIEF SOUGHT

WHEREFORE, the Plaintiff prays that this Honorable Court:

A. Enter judgment against Defendant Edart on Count I for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

B. Enter judgment against both Defendants on Count II for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

C. Enter judgment against both Defendants on Count III for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

D. Enter judgment against both Defendants on Count IV for compensatory damages, punitive damages, reasonable attorneys' fees, interest and costs.

E. Enter judgment against Defendant Edart on Count V for compensatory damages, reasonable attorneys' fees, interest and costs.

F. Enter judgment against Defendant Edart on Count VI for compensatory damages, reasonable attorneys' fees, interest and costs.

G. Enter judgment against Defendant Prout on Count VII for compensatory damages, interest and costs.

H. Order Defendant Edart to reinstate Plaintiff with back pay.

I. Enter such other and further relief as this Honorable Court may deem just and proper.

**PLAINTIFF CLAIMS A TRIAL BY JURY ON ALL COUNTS.**

DAVID OLIVEIRA,

By his Attorney,

*/s/ Richard A. Mulhearn*
Richard A. Mulhearn
BBO: 359680
Law Offices of Richard A. Mulhearn
41 Elm Street
Worcester, MA 01609
Tel: (508) 753-9999

March 11, 2004.